UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARCIA MAE CLIFFORD,

        Plaintiff,

Case No. 1:06-CV-316

v.

Hon. Richard Alan Enslen

FMF CAPITAL, LLC and
PREMIER MORTGAGE FUNDING,

**OPINION**

        Defendants.
_____/

      The crooks in prison wear (orange jump suits) are easy to spot. Those in business wear are not; though they do no less harm to their unsuspecting victims.

      This matter is before the Court on Plaintiff Marcia Mae Clifford's Motion for (Partial) Summary Judgment concerning Count One of the First Amended Complaint. Plaintiff seeks partial judgment only against Defendant Premier Mortgage Funding, Defendant FMF Capital, LLC having been previously dismissed from this suit. The Motion has been fully briefed and oral argument is unnecessary in light of the briefing. *See* W.D. Mich. L. Civ. R. 7.2(d).

### BACKGROUND

      Plaintiff Marcia Mae Clifford is an indigent person. (Financial Affidavit at 1; Order to Proceed *in Forma Pauperis*.) According to her Financial Affidavit, her sole monthly income of $715/month is furnished by the Social Security Administration (disability income); she also receives $30/month of food stamp assistance. (Financial Affidavit 2.) Her sole property, apart from a $600 vehicle, is her primary residence at 232 Hambrook Street, Belding, Michigan, which is valued at $79,000, most of which is subject to a mortgage by FMF Capital, LLC. (*Id.*)

How Ms. Clifford acquired this mortgage is the subject of this lawsuit and her claims against Defendant Premier Mortgage Funding. Plaintiff has sued Defendant on several grounds, including violation of the Real Estate and Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* (First Am. Compl. ¶¶ 33-38.) Plaintiff acquired her loan from FMC Capital, LLC through Defendant Premier Mortgage Funding, who acted as the mortgage loan originator/broker. (Pl.'s Br. in Support of Mot., Ex. 2 at 1; Marcia Clifford Aff. ¶ 7.) The first Application for the loan, which was completed by Defendant's agent, Pleas Roy Daniels, disclosed no employment for Ms. Clifford on the employment section of the Application. (*Id.*) The first Application also disclosed that Ms. Clifford was applying for a fixed rate conventional mortgage refinancing loan. (*Id.*) This is not what Ms. Clifford ultimately obtained, however.

Some weeks later when the loan was to close, the title agent, Laura Holstine of Netco Title, presented for Ms. Clifford's signature, at her home, a second loan application for an adjustable rate loan. (Pl.'s Br. in Support of Mot., Ex. 3 at 1; Marcia Clifford Aff. ¶ 12-17.) The second Application was also blatantly false in that it represented that Ms. Clifford was engaged in paid full-time work at a foster care home. (*Id.*) Ms. Clifford was urged to sign the forms and did not learn the pertinent misrepresentations and loan terms until afterwards. (*Id.*)

Among the surprises to Ms. Clifford in the loan paper work were the high amount of settlement charges ($4,692.19) for borrowing a total of $62,000. (Pl.'s' Br. in Support of Mot, Ex. 5 at 1-2.) Of that amount, which was ample, Defendant included charges for both a $1,500 loan origination fee and a $1,240 fee for the "yield-spread premium." (*Id.* at 2 lines no. 101 & 108.) These amounts were later characterized by the person who assessed them, Daniels, as "just ridiculous,

2

wow." (Daniels Dep. 20.) Daniels only submitted Clifford's loan application to a single lender for approval. (Pl.'s Req. to Admit ¶ 24.)

Defendant, in its opposition briefing, characterizes the charges as routine for a high-risk loan which warranted both additional services by the lender (investigation and verification) and additional compensation for assuming a riskier loan. (Def.'s Br. 4-5.) Defendant has also characterized the preparation of the false documents as caused by misrepresentations by Plaintiff, though Defendant has not filed any evidence (affidavits or deposition testimony) supporting either its position about how and why the loan documents were prepared falsely or its position that it performed additional services for the yield-spread premium.[1] (*See Id.* & Exhibits.) Even acknowledging that Plaintiff's credit score was not perfect, Plaintiff's expert has stated under oath that the fees charges in connection with this loan were approximately twice as much as what are considered high-end fees for FHA lending appropriate to the borrower's situation. (Danell Merren Aff. ¶¶ 6-7.) Defendant has failed to provide competing evidence concerning the commercial reasonableness of the fees charged, which on their face were "ridiculous" according to the person who prepared the documents.

**STANDARDS FOR SUMMARY JUDGMENT**

Plaintiff's Motion is brought pursuant to Federal Rule of Civil Procedure 56. Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted

---

[1] Defendant's characterization also fails to explain how they could have accepted a representation of full-time work, but treated her as a shut-in for the purpose of closing the loan.

and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323. The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (quoting Federal Rule of Civil Procedure 56(c)). Moreover, affidavits must meet certain requirements:

> [A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Fed. R. Civ. P. 56(e).

In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56 motion, the Court should not consider unsworn or uncertified documents, *Id.*, or unsworn statements, *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991); *Little v. BP*

*Exploration & Oil Co.,* 265 F.3d 357, 363 n.3 (6th Cir. 2001).  These requirements are fatal to Defendant's defense of Count One, which depend entirely upon unsworn statements in their opposition briefing.

### **LEGAL ANALYSIS**

Plaintiff's Count I RESPA claim alleges that Defendant, in connection with the above described mortgage transaction, violated RESPA by accepting a "referral fee" for assigning the mortgage to the lender.  Section 8 of RESPA, as amended, provides in pertinent part:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a).  Notwithstanding, the above section does not prohibit the payment of bona fide salary or compensation for goods, facilities or services actually performed.  12 U.S.C. § 2607(c)(2).

Given these parameters of RESPA, the United States Department of Housing and Urban Development ("HUD") has developed two policy statements to distinguish between illegal kickbacks/referral fees and legal fee for service agreements in the context of yield-spread premium charges.  *See RESPA Statement of Policy 2001-1*, 66 FR 53052, 53055-56 (Oct. 18, 2001); *RESPA Statement of Policy 1999-1*, 64 FR 10080, 10084-85 (Mar. 1, 1999).  These policies generally state that yield-spread charges are not illegal *per se*, nor is the assessment of charges based upon a rate sheet illegal *per se*, but, nevertheless, the individual lending transaction will be assessed for legality based upon whether: the total compensation for the mortgage broker is for goods or facilities furnished or services actually performed; and second, the total compensation mut be reasonably related to the goods or facilities furnished or services actually performed.  Mortgage counseling is

one service which may warrant additional compensation, but typically only when the broker obtains at least three competing offers for borrower consideration. *See* 64 FR at 10085.

In this instance, the record supports that the mortgage lender did precious little to earn the large loan origination fee let alone the additional yield-spread premium. What the broker did on this record was to consult with the borrower, complete an application, complete a second falsified application with adverse lending terms not sought by the borrower, and obtain a single lending offer for the borrower's acceptance. The broker was not involved at the closing and the fees assessed were not related to mortgage counseling, which did not occur. Verification services were not meaningfully provided given that the transaction was prepared to be fraudulent and to misstate the borrower's financial condition for the purpose of rewarding the brokerage firm, but impoverishing the borrower. The only evidence of record shows that the total compensation for the loan origination was grossly out of the range of reasonable compensation and no additional services were performed to authorize payment of a yield-spread premium. *See Perkins v. Johnson*, 2007 WL 521172, *2 (D. Colo. 2007) (permitting complaint alleged in accordance with RESPA/HUD standards). *Cf. Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1012-14 (9th Cir. 2002) (allowing payment of yield-spread premium when based upon reasonable compensation within marketplace). No reasonable juror could dispute on this record that the yield-spread premium, $1,240, was not reasonable in amount and was not based upon actual goods, facilities or services when the agent who prepared the documentation was of the view that the origination fees were ridiculous.

RESPA assesses damages in the event of an unauthorized kickback or referral fee in the amount of three times the illegal fee. 12 U.S.C. § 2607(d)(2). Since the record is clear that the unearned yield-spread premium fee was $1,240, the Court will assess treble damages on Count I in

the amount of $3,720. The Court will also enter partial judgment in favor of Plaintiff as to such amount. While RESPA also allows a prevailing plaintiff to recover attorney fees and costs, *see* 12 U.S.C. § 2607(d)(5), *see also Blum v. Stenson*, 465 U.S. 886 (1984) (permitting attorney fee recovery by not-for-profit legal organization), under the Federal Rules of Civil Procedure and the Western District of Michigan Local Civil Rules, the process to recover those fees and costs is to occur only after entry of the final judgment (in order to avoid piecemeal requests). *See* Fed. R. Civ. P. 54(d) (permitting attorney fee and expense motions within 14 days of judgment); W.D. Mich. L. Civ. R. 54.1 (permitting filing of bill of costs within 30 days of judgment). As such, the question of costs and attorney fees is reserved.

## CONCLUSION

In accordance with this Opinion, Plaintiff's Motion for (Partial) Summary Judgment shall be granted and summary judgment shall enter as to Count I in favor of Plaintiff and against Defendant Premier Mortgage Funding in the amount of $3,720, and the approval of costs and attorney fees is reserved pending final judgment.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>       June 11, 2007 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |